IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2022

**STATE OF TENNESSEE v. ROBERT LANCASTER STEED, JR.**

**Appeal from the Criminal Court for Knox County**
**No. 115769          Scott Green, Judge**
_____

**No. E2022-00145-CCA-R3-CD**
_____

In 2019, the Defendant, Robert Lancaster Steed, Jr., pleaded guilty to evading arrest, false imprisonment, domestic assault, and theft. The trial court sentenced the Defendant, by agreement of the parties, to an effective sentence of six years of probation. After several violations, the trial court ultimately revoked the Defendant's probation and ordered him to serve his sentence in the Department of Correction. On appeal, the Defendant contends that his poor performance on probation was due to his drug addiction, so the trial court should have ordered a period of confinement followed by intensive outpatient substance abuse and mental health treatment. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., P.J., and CAMILLE R. MCMULLEN, J., joined.

Clinton Evan Frazier, Maryville, Tennessee, for the appellant, Robert Lancaster Steed, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Joseph Welker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from a domestic assault incident during which the Defendant drove his father's vehicle, without permission, into the victim's house, assaulted her, and then forced her to get into his car and leave with him. For these events, the Knox County grand jury indicted the Defendant for evading arrest, Count 1, false imprisonment, Count 2, domestic assault, Count 3, and theft of property valued between $1,000 and $10,000, Count 4. The Defendant pleaded guilty to all four of the indicted offenses.

The transcript of the guilty plea is not included in the record; however, we glean the underlying facts of this case from the presentence investigation report, which summarizes the facts as follows:

The warrant alleges that on or about Monday, February 18, 2019, at 21:48 hours officers responded to an aggravated assault call . . . [on] Sunshine Circle, Knoxville. While in route to the above location, officers received information that a black male had driven a blue Dodge Caravan . . . into the residence . . . [on] Sunshine circle and was then beating a female. At this time officers arrived on scene and observed the Defendant leaving the scene in a blue Caravan. Officers initiated primary emergency lights and siren in an attempt to stop the Defendant, however, the Defendant did not stop and officers pursued the vehicle reaching speeds of 97 MPH. The Defendant was weaving in and out of traffic and running red lights endangering the lives of other drivers and pedestrians, as well as, the life of the victim . . . who was put in the situation against her will. The Defendant stopped at Bradshaw Gardens at Fountain Drive, Knoxville, where the victim bailed out of the front passenger side of the vehicle in an attempt to escape the vehicle. The Defendant then pulled onto Fountain Drive and exited the vehicle where he was taken into custody. Officers spoke with the victim who stated that the Defendant had pushed her which caused her to fall down. Officers observed a fresh abrasion on her elbow. The victim also stated she did not want to go with the Defendant, but the Defendant grabbed her and shoved her in the vehicle with him, knowing she did not want to go with him. The Defendant also admitted that he saw the police attempting to stop him and chose not to stop. The Defendant also said that the victim was pleading with him to stop the vehicle. A search of the vehicle revealed under 10 grams of a green leafy substance in a clear plastic baggy believed to be marijuana and a pipe with what is believed to be marijuana residue. An investigation revealed that the vehicle belongs to the victim's father and that the Defendant did not have permission to drive it. Officers spoke with multiple witnesses at [the Sunshine Circle address] who stated that the Defendant and victim were in an argument when the Defendant hit the victim and then got into the vehicle and dr[o]ve it towards the victim, but lost control and collided with the residence at the above address. An NCIC records check revealed an outstanding warrant on file for the Defendant for simple possession and it showed that he had a revoked license. The Defendant could also not provide proof of financial responsibility for the vehicle. . . .

The presentence report also included the Defendant's extensive criminal record, his mental health diagnoses, and his life-long issue with substance abuse. On June 21, 2019, the trial court sentenced the Defendant to an effective sentence of six years of probation.

On September 11, 2019, the trial court issued a probation violation warrant based on the Defendant's probation officer's allegation that the Defendant failed to report for intake on or about August 20, 2019, and August 27, 2019. On October 8, 2019, the trial court amended this warrant to include that the Defendant had also violated his probation by being arrested on or about October 3, 2019, for theft of property valued between $2,500 and $10,000.

On October 30, 2019, the trial court found the Defendant indigent and ordered that the Defendant be released on his own recognizance. It continued the case until November 21, 2019.

At the November 21, 2019 hearing, the trial court noted that the Defendant had had a positive drug screen. It ordered that the Defendant report to the Knox County Jail on November 29, 2019, at 6 pm to serve a forty-eight-hour sanction. It also issued a mittimus to the Knox County Sheriff's Department and continued the case to January 8, 2020.

On December 3, 2019, the trial court again amended the original probation violation warrant to include that the Defendant had not followed the rules of probation and failed to turn himself in to the Knox County Jail as ordered on November 29, 2019. The warrant further alleged that the Defendant had illegal drugs in his possession and had tested positive for THC on the morning of November 21, 2019. At a follow-up appointment on the same day, he tested positive for cocaine and methamphetamine, but not THC.

On March 31, 2020, the trial court again amended the probation warrant to include that the Defendant had again violated his probation by being arrested on March 27, 2020, for simple possession/casual exchange of methamphetamine and for possession of drug paraphernalia. The amendment further alleged that the Defendant had failed to report his arrest to his probation officer and that he was found in possession of approximately 29 grams of marijuana and 0.5 grams of methamphetamine on or about March 27, 2020, when arrested.

On April 7, 2020, the trial court ordered that the Defendant be released on his own recognizance and continued the case until June 11, 2020.

On August 5, 2020, the trial court amended the probation violation warrant to include that the Defendant failed to follow the recommendation of his social worker and probation officer that he refrain from using illegal drugs as evidenced by his positive drug

screen for methamphetamine on July 13, 2020. The warrant also was amended to allege that he was in possession of and used methamphetamine as evidenced by his positive test result.

On August 14, 2020, the trial court ordered that the Defendant be released on his own recognizance and continued the case to August 31, 2020.

On December 2, 2020, the trial court amended the probation violation warrant to include that the Defendant failed to report for his relapse prevention class on November 5, 12, and 19, of 2020. The Defendant also tested positive for methamphetamine and amphetamine on November 23, 2020.

On February 16, 2021, the trial court amended the probation violation warrant to include that the Defendant had absconded from supervision. At a hearing on March 16, 2021, the trial court released the Defendant on his own recognizance and continued the case until March 17, 2021.

On April 5, 2021, the trial court issued a capias for the Defendant's arrest. Shortly thereafter, on May 3, 2021, the trial court amended the probation violation warrant to include that the Defendant had failed to report to his probation officer on April 5 and 19, 2021, and that he tested positive for methamphetamine and amphetamine on April 1, 2021.

At a hearing on July 1, 2021, the parties informed the trial court that the Defendant had some health issues, including congestive heart failure. The Defendant's attorney stated that the Defendant intended to admit that he violated his probation and submit himself into custody. The Defendant then admitted his violation of his probation. At the Defendant's attorney's request, the trial court agreed to a referral to Community Alternative to Prison Program ("CAPP"). The trial court continued the case to August 12, 2021.

At a hearing on August 9, 2021, the Defendant's attorney informed the trial court that CAPP had rejected the Defendant as a suitable candidate. The Defendant's attorney asked for a referral to the Day Reporting Center Program ("DRC"). The trial court agreed, noting that those referrals were taking some time and that the Defendant would remain in custody pending the referral. The Defendant's attorney asked that the Defendant be released pending the referral, and the trial court denied the request. The trial court continued the case to October 8, 2021.

At a hearing on October 8, 2021, the Defendant's attorney informed the trial court that the DRC had denied the Defendant's referral. The attorney further said that the Defendant had a "very, very serious drug problem which he has not really addressed." The attorney stated that when the DRC reviewed the Defendant, one of the concerns it listed

included a recorded phone call from jail between the Defendant and another person. In the phone call, the report stated, the Defendant discussed his "complete lack of desire to attend the DRC program and had an aggressive tone towards the person with which he was in communication with." The Defendant's attorney provided context to that conversation saying that it was him to whom the Defendant was speaking and that the Defendant was "venting" and not in an emotional state to adequately convey his true desires.

The trial court noted that judgment in this case was entered August 5, 2019, and that the Defendant had been before him in revocation status on twenty-five occasions. The trial court noted that he had given the Defendant repeated chances but that the Defendant never complied with the terms of his probation.

The Defendant spoke on his own behalf and implored the trial court for another chance. The trial court acquiesced and offered the Defendant the chance to do a ninety-day Intensive Treatment Program ("ITP"). While offering the Defendant no promises, he said that he would reevaluate if the Defendant successfully completed the program.

At a hearing on February 3, 2022, the trial court noted that DRC and CAPP did not want to work with the Defendant. The State's attorney said that the Defendant had had so many repeat violations that the Enhanced Probation office did not want to work with him. The Defendant's attorney stated that the Sheriff's Office had come up with a plan for re-entry into probation that was detailed. He further stated that the Defendant had successfully completed ITP, two anger management classes, a time management class, a substance abuse education class, and a behavior change class. The Defendant's attorney noted the difference in the Defendant's demeanor and behavior since completing his classes.

The trial court found that the Defendant had violated the terms of his probation, and it revoked the Defendant's probation. It then ordered that he serve the balance of his sentence in confinement, with credit for time served. The trial court noted that the Defendant would not have much more time to serve before being released, waived all of his court costs, and wished him success. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant does not contest the basis for his probation violation. He instead asserts that the trial court "in its exercise of discretion, should elect to impose split confinement and furlough him for intensive outpatient treatment with ITP and mental health treatment . . . ." The State counters that, upon a finding that the Defendant has violated the terms of his probation, the trial court has the authority to order the Defendant to serve his sentence in confinement. We agree with the State.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2018), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2018). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." If a trial court revokes a defendant's probation, options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2018); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding, including the consequences of the revocation, is entitled to a presumption of reasonableness unless there has been an abuse of discretion. *See State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022); *see also State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). This is true "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record. It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *See Dagnan*, at 759. Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Id*. at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

The record in this case provided substantial evidence to support the trial court's revocation of probation, as the Defendant admitted his violations. *State v. Glendall D. Verner*, No. M2014-02339-CCA-R3-CD, 2016 WL 3192819, at *7 (Tenn. Crim. App., at Nashville, May 31, 2016), *perm. app. denied* (Tenn. Sept. 30, 2016).

After the trial court found that the Defendant had violated the terms of his probation, it retained discretionary authority, pursuant to Tennessee Code Annotated section 40-35-310(b), to order the Defendant to serve his sentence in incarceration. The determination of the proper consequence of a probation violation embodies a separate exercise of discretion. *Hunter*, 1 S.W.3d at 647; *see also Dagnan*, 641 S.W.3d at 759. Case law establishes that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999), perm. app. denied (Tenn. June 28, 1999).

We conclude that the trial court did not abuse its discretion when it found that the Defendant had violated his probation. As the trial court noted, the Defendant's original sentence arises from serious offenses that involved the risk of death. Further, the trial court had given the Defendant multiple chances, including a short duration of jail time, to remain on probation following prior violations of probation. The Defendant never successfully complied with the terms of his probation, despite being given multiple chances. As such, the trial court retains discretionary authority to order that the Defendant serve the balance of his sentence in confinement. We conclude that the trial court did not abuse its discretion. Therefore, the Defendant is not entitled to relief.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE